IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOY C.-L., § | |
|     PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:23-CV-896-B-BK |
| § | |
| COMMISSIONER, SOCIAL SECURITY § | |
| ADMINISTRATION, § | |
|     DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636 and *Special Order 3*, this appeal of the denial of Plaintiff's application for social security disability benefits is before the undersigned United States magistrate judge for findings and a recommended disposition. For the reasons below, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED**.

**I. BACKGROUND**

    *A. Procedural History*

Plaintiff seeks judicial review of the Commissioner's final decision denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("Act"). Doc. 1, *passim*. Plaintiff filed her application in May 2021, alleging a period of disability beginning in May 2017, due to post-traumatic stress disorder ("PTSD"), depression, migraine headaches, eye pain, neck pain, degenerative arthritis, spinal stenosis, lower back pain, pain in her feet, and GERD. Doc. 11-1 at 225-26, 305. Her claim was denied at the administrative level, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g).

*B. Factual Background*

Plaintiff was 56 on her alleged onset date, has a college education, and previously worked as a chief payroll officer in the military. Doc. 11-1 at 306-307, 313.

Her relevant medical history begins at U.S. Naval Hospital in Naples, Italy in March 2011, when Dr. Chad Bradford, M.D., assessed her depression and advised her to continue her current medications, including Effexor XR and Pamelor.[1] Doc. 11-2 at 416. Dr. Bradford also prescribed Buspar to target Plaintiff's anxiety and affective symptoms and stated that Plaintiff should follow-up in one month (or sooner, if necessary) with the mental health clinic. Doc. 11-2 at 416.

In October 2011, Plaintiff was referred to Dr. Mark Michael Heyne, M.D., for a mental health evaluation due to "vague suicidal ideation in the context of worsening depression symptoms."[2] Doc. 11-2 at 372. Dr. Heyne noted that Plaintiff had undergone prior mental health evaluations and received mental health services at various times dating back as far as 2001. Doc. 11-2 at 372. During her appointment with Dr. Heyne, Plaintiff's depressive symptoms included "persistent sad mood and bouts of tearfulness, notably decreased energy, significant sleep difficulty, decreased concentration and problems with short-term memory, intermittent feelings of guilt . . . , and passive suicidal ideation . . . ." Doc. 11-2 at 373. Dr.

---

[1] *Nortriptyline Capsules*, Cleveland Clinic, https://my.clevelandclinic.org/health/drugs/20068-nortriptyline-capsules (last visited June 28, 2024) (noting that Pamelor is a common brand name for nortriptyline, which "treats depression"); *Venlafaxine Tablets*, Cleveland Clinic, https://my.clevelandclinic.org/health/drugs/20828-venlafaxine-tablets (last visited June 28, 2024) (noting that Effexor is a common brand name for venlafaxine, which "treats depression and anxiety").

[2] During the relevant period, Plaintiff also had an extensive history of treatment for multiple physical conditions. However, because the relevant portions of the parties' briefs concern the ALJ's consideration of Plaintiff's mental impairments, the Court limits its discussion accordingly.

Heyne's diagnosis also noted occupational problems—"difficulty at work due to physical pain and depressive symptoms." Doc. 11-2 at 373.

In September 2012, a neurologist, Dr. Michael R. Wagner, M.D. noted that Plaintiff was recently "medevac'd from Naples, Italy for treatment of depression." Doc. 11-2 at 55. At that visit with Dr. Wagner, Plaintiff diagnosed "significant" depression. Doc. 11-2 at 55.

About five months later, a psychiatrist/psychologist for the Department of Veterans Affairs, Dr. Michelle B. Harvey, Ph.D., completed a disability questionnaire for Plaintiff, in which Dr. Harvey noted that Plaintiff had been diagnosed with chronic major depressive disorder, and adding that her mental condition impairs her occupational capabilities in most areas. Doc. 11-10 at 446, 448. As far as Plaintiff's symptoms, Dr. Harvey noted depressed mood; anxiety; near-continuous panic or depression affecting her ability to function independently, appropriately, and effectively; chronic sleep impairment; mild memory loss; disturbances of mood or motivation; inability to establish and maintain effective relationships; and persistent delusions or hallucinations. Doc. 11-10 at 449-50. Dr. Harvey further acknowledged that Plaintiff meets some of the criteria for PTSD. Doc. 11-10 at 450.

In January 2015, a mental health treatment note by Dr. Elizabeth M. John, M.D., reflected that Plaintiff had diagnoses of PTSD and major depression. Doc. 11-10 at 110. Dr. John advised Plaintiff to, *inter alia*, continue her current medications. Doc. 11-10 at 110.

At a visit with Dr. John in February 2016, Plaintiff reported that she was "not doing well" and had been having problems sleeping over the past month. Doc. 11-10 at 47. Plaintiff also reported that she had been having nightmares and traumatic flashbacks about two-to-three times per week. Doc. 11-10 at 47. Dr. John concurred with Plaintiff's self-assessment that, in general, her mood had been "down." Doc. 11-10 at 47. About six months later, Plaintiff reported to Dr.

3

John that her nightmares, flashbacks, and intrusive thoughts had been ongoing. Doc. 11-10 at 16.

In August 2017, Plaintiff continued to report that she was "not doing well," primarily because she was sleeping only two-to-four hours per night. Doc. 11-3 at 332. Relatedly, Plaintiff reported that she experienced nightmares once per week, flashbacks a few times per month, and intrusive thoughts frequently. Doc. 11-3 at 332. Plaintiff further conveyed feeling more depressed and feeling fearful "for no reason." Doc. 11-3 at 332. Dr. John noted that Plaintiff's mood was somewhat depressed. Doc. 11-3 at 332.

During a social work assessment the following year, in June 2018, Plaintiff reported suicidal thoughts once per month, and as recently as the preceding week. Doc. 11-3 at 278. The social worker noted that Plaintiff has been diagnosed with depression and anxiety and has been taking medication. Doc. 11-3 at 278. Plaintiff's date last insured ("DLI") was December 31, 2018.[3] Doc. 11-1 at 22.

C. *The ALJ's Findings*

In December 2022, the ALJ found that Plaintiff was not disabled. Doc. 11-1 at 30. The ALJ found that Plaintiff had not engaged substantial gainful activity between her alleged onset date and her date last insured and had the severe impairments of (1) migraine headaches; (2) cervical spondylosis; and (3) degenerative disc disease of the lumbar spine. Doc. 11-1 at 22-23. The ALJ concluded, however, that none of Plaintiff's severe impairments, or any combination thereof, met or "medically equal[ed]" an impairment listed in the applicable regulations. Doc.

---

[3] The record also contains various medical records post-dating Plaintiff's DLI. However, as those records are not relevant to the ALJ's determination, they are not discussed here. *See Torres v. Shalala*, 48 F.3d 887, 894 n.12 (5th Cir. 1995) (noting evidence post-dating DLI is not relevant to the Commissioner's analysis).

4

11-1 at 24. The ALJ further found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, subject to certain limitations. Doc. 11-1 at 27. Based on this RFC, the ALJ concluded that Plaintiff could perform her past relevant work and thus was not disabled. Doc. 11-1 at 29.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner considers (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do her past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden on the first four steps. *Id.* (citation omitted). The burden then shifts to the Commissioner to "prove the claimant's employability." *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (quotation marks and citation omitted). The Court can neither "reweigh the evidence or substitute its judgment for the Commissioner's." *Id.* A finding that substantial evidence does not exist "is appropriate only

5

if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (citation omitted).

## III. ANALYSIS

A. *The ALJ failed to adequately consider Plaintiff's non-severe mental impairments in assessing her RFC.*

Plaintiff argues that the ALJ failed to consider the combined effect of both her severe and non-severe impairments in determining her RFC. Doc. 12 at 5. Although the ALJ acknowledged that Plaintiff's non-severe impairments (major depressive disorder, generalized anxiety disorder, and PTSD) produced mild limitations in the four functional areas known as the "paragraph B" criteria, Plaintiff contends the ALJ erred by failing to consider whether such limitations would still allow her to perform complex tasks in light of the characterization of her past work as "very complex." Doc. 12 at 6, 8.

Defendant counters that the ALJ properly considered the combined effects of Plaintiff's severe and non-severe impairments, adding that a finding of mild limitations under the paragraph B criteria does not obligate the ALJ to include corresponding limitations in Plaintiff's RFC. Doc. 20 at 5-8. Moreover, Defendant notes that Plaintiff cites no evidence from the administrative record to prove that her non-severe mental impairments resulted in any limitations that should have been included in her RFC. Doc. 20 at 9-10.

Residual functional capacity, or RFC, is defined as the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1). The RFC determination is a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988) (per curiam).

In determining a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996), 1996 WL 362207; *see* 20 C.F.R. § 404.1545(a)(2). "This is because even non-severe limitations may combine with other severe impairments to prevent an individual from doing past relevant work or narrow the range of work that the individual can perform." *Martha L. v. Saul*, No. 1:20-CV-00003-H-BU, 2021 WL 3610316, at *4 (N.D. Tex. July 27, 2021) (Parker, J.) (cleaned up), *adopted by* 2021 WL 3604082 (N.D. Tex. Aug. 13, 2021) (Hendrix, J.).

To assess the severity of a claimant's mental impairments and their effect on a claimant's ability to work, the Commissioner follows what is commonly called the "technique." 20 C.F.R. § 404.1520a(a). In applying the technique, an ALJ must first decide whether the claimant has a medically determinable mental impairment ("MDI"). *Id.* § 404.1520a(b)(1). The ALJ must then consider evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and pressures in a work setting. 20 C.F.R. § 404.1545(c). The ALJ uses the "paragraph B criteria" to rate the severity of the claimant's mental limitations in the following functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* § 404.1520a(c)(3). To complete this step, the ALJ rates the claimant's degree of limitation in each area as "[n]one, mild, moderate, marked, or extreme." *Id.* § 404.1520a(c)(4). These ratings then inform the ALJ's conclusions at subsequent steps of the sequential analysis. *Id.* § 404.1520a(d).

Here, the ALJ determined that Plaintiff's mental impairments would cause her no more than mild limitations in each of the four functional areas. Doc. 11-1 at 23-24. The ALJ's

evaluation of mental limitations at this step, however, is "not an RFC assessment but [is] used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. The subsequent mental RFC assessment requires a more detailed analysis in which the ALJ must consider a claimant's mental disorders and express them in terms of work-related functions, including the claimant's ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting." *Id.* at *4, *6.

"Nevertheless, courts within this district have found no legal error where an ALJ does not include mental limitations in a claimant's RFC so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis, even those impairments that are non-severe." *Tamara G. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-631-D-BK, 2023 WL 2504912, at *3 (N.D. Tex. Feb. 13, 2023) (Toliver, J.) (cleaned up) (collecting cases), *adopted by* 2023 WL 2518840 (N.D. Tex. Mar. 14, 2023) (Fitzwater, J.). But when an ALJ finds mental limitations are credible at steps two and three but does not include any discussion of them at later steps, an ALJ must explain "*why* he omitted *any* mental limitations from the residual-functional-capacity formulation." *Castillo v. Kijakazi*, 599 F. Supp. 3d 483, 489 (W.D. Tex. 2022) (emphasis in original).

In the case, *sub judice*, the ALJ's assessment of Plaintiff's RFC does not reflect that he adequately considered Plaintiff's non-severe mental impairments. Indeed, the ALJ noted at step two that Plaintiff was at least mildly limited in all four of the paragraph B criteria. Doc. 11-1 at 23-24. The ALJ then stated, "The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a *more detailed* assessment." Doc. 11-1 at 24

(emphasis added).  Under SSR 96-8p, this "more detailed assessment" entails, *inter alia*, expressing the claimant's mental impairments in terms of work-related functions, including her ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *4, *6.

      At most, the ALJ acknowledged the mere existence of non-severe mental impairments—"the updated records support a finding of non-severe mental impairments for Social Security purposes." Doc. 11-1 at 29; *see also Turner v. Colvin*, No. 3:13-CV-1458-B, 2014 WL 4555657, at *5 (N.D. Tex. Sept. 12, 2014) (Boyle, J.) ("evidence which merely describes Plaintiff's medical conditions is insufficient to support the ALJ's RFC determination").  The ALJ need not ultimately assess limitations based on Plaintiff's non-severe mental impairments, but his decision does not reveal that such impairments received the consideration they were due with respect to how they affected Plaintiff's work-related functions.  *See Audrey M. D. v. Comm'r of Soc. Sec.*, No. 3:21-CV-02425-B-BT, 2022 WL 18356464, at *3 (N.D. Tex. Dec. 28, 2022) (Rutherford, J.), *adopted by* 2023 WL 223178 (N.D. Tex. Jan. 17, 2023) (Boyle, J.) (ALJ erred when she found that claimant suffered from non-severe mental impairments resulting in mild limitations but failed "to explain why she omitted [these] mental limitations from the RFC formulation or the hypothetical to the VE"); *Castillo*, 599 F. Supp. 3d at 489 (ALJ erred because, although acknowledging that Castillo was at least mildly limited in her mental functioning, "absent from the ALJ's opinion is an explanation for why these mental limitations should not be reflected in Castillo's residual functional capacity."); *Martha L.*, 2021 WL 3610316, at *5 (ALJ erred when he "recognized that Plaintiff suffered from non-severe mental impairments and further assessed

Plaintiff with mild mental limitations in her ability to perform basic work activities," but failed to develop the impact of these limitations once he performed his RFC analysis).

B. *The ALJ's error was not harmless.*

Notwithstanding this legal error, remand is not warranted if the ALJ's error is harmless. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

"The ALJ has a responsibility to adequately explain his reasoning in making the findings on which his ultimate decision rests, and in doing so must address all pertinent evidence. The Court's inability to clearly determine whether the ALJ adequately considered certain limitations or not constitutes reversible error." *Gonzales v. Berryhill*, No. 3:16-CV-1830-BN, 2017 WL 3492215, at *6 (N.D. Tex. Aug. 15, 2017) (Horan, J.) (ALJ reversibly erred in failing to discuss any mental limitations the claimant might face due to his diagnosed acute anxiety disorder in formulating his RFC assessment) (citations and internal quotation marks omitted). The ALJ's RFC determination could "have been different had he considered the limitations that [Plaintiff] faces due to [her mental impairments]. This, in turn, could 'have affected the jobs available at step five of the sequential evaluation process, and [Plaintiff] may have been found disabled.'" *Id.* at *6 (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 761-62 (5th Cir. 2017)); s*ee also Martha L.*, 2021 WL 3610316, at *7 (ALJ reversibly erred when he failed "to evaluate Plaintiff's mental impairments in the context of the mental demands of Plaintiff's past work" and "incorporation of mental limitations could have resulted in a different outcome").

Here, upon questioning, the VE testified that if a person would be off task 15% or more of the time during the course of an eight-hour workday, they could not maintain competitive employment. Doc. 11-1 at 66-67; *Cf. Martha L.*, 2021 WL 3610316, at *6 ("The ALJ then posed a third hypothetical, in which the individual was off-task fifteen percent of more of the time

10

during an eight-hour work day. . . . The VE confirmed that under those circumstances, there would be no jobs that the individual could perform."). This additional questioning of the VE demonstrates that the ALJ's "determination could have been different had the ALJ properly incorporated the mental limitations Plaintiff faces into the RFC." *Martha L.*, 2021 WL 3610316, at *7.

Thus, the Court concludes that the ALJ's error was not harmless, and remand is warranted.[4]

## C. CONCLUSION

For the foregoing reasons, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED** for further proceedings.

**SO RECOMMENDED** on July 8, 2024.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[4] Because remand is required on this issue, Plaintiff's remaining arguments are not reached, but she may raise them at the administrative level. *See* 20 C.F.R. § 404.983 (on remand from a federal court, the ALJ may consider any issues relating to the claim).

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).